UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Crim. No. 16-10126-ADB |
| | * | |
| ERIC VICK. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

**I.   Introduction**

On May 5, 2016, Defendant Eric Vick was indicted on two counts of unlicensed interstate transportation of firearms in violation of 18 U.S.C. § 922(a)(3). [ECF. No. 1]. At his arraignment on June 1, 2016, the government moved for detention and Vick was ordered detained pending the detention hearing. [ECF No. 6, 10]. After the detention hearing on October 19, 2016, Magistrate Judge Judith G. Dein issued a detention order in which she found by a preponderance of the evidence that Vick's release would pose a risk of nonappearance at court proceedings, and by clear and convincing evidence that his release would pose a risk of harm to the public [ECF No. 38]. Magistrate Judge Dein included an explanation for her decision, noting that she was greatly concerned by the fact that "the firearms continue to remain unaccounted for this many years later." Id.

On February 7, 2017, Vick appealed, seeking to have the order of detention revoked or amended pursuant to 18 U.S.C. § 3145(b). [ECF No. 53]. On February 27, 2017, the government opposed the motion. [ECF No. 57]. For the reasons explained below, Vick's motion [ECF No. 53] is DENIED.

## II.     Factual Background

The following facts are taken from the Order of Detention issued by Magistrate Judge Dein [ECF No. 38 (hereinafter, "Order")], the transcript of the detention hearing before Magistrate Judge Dein [ECF No. 51 (hereinafter "Hearing Tr.")], and the pleadings of the parties [ECF Nos. 53, 57].

During the relevant time period, Vick worked at Logan Airport in Boston. Hearing Tr. 8:1–15. In 2013, using his position as a JetBlue ground operations crew member, Vick smuggled cash through security checks at Logan Airport in return for compensation. Id. at 40:21–22, 45:14–16; Order at 3; see also United States v. Vick, 14-cr-10271-RWZ-2 (D. Mass., May 26, 2015). Vick was caught in a sting operation, indicted on money laundering and related charges, pleaded guilty, and was sentenced to eighteen months imprisonment. Order at 3; Hearing Tr. 34:25–35:6, 39:24–25. Vick was scheduled to complete his sentence on October 22, 2016. [ECF No. 31]. While serving that sentence, Vick was indicted on the current charges based on the transportation of seven firearms from Georgia to Massachusetts without a license. Order at 3; [ECF No. 1]; Hearing Tr. 14:9–12. Vick now faces an estimated guideline sentence of forty-one to fifty-three months imprisonment. Order at 3.

During the detention hearing, Shervin Dhanani, a special agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives who worked on the investigation involving Vick, testified to the following. There is evidence that Vick transported to Massachusetts several firearms that he purchased in Georgia in 2011. Hearing Tr. 8:16–24, 14:9–16. The police recovered one of these firearms from the scene of a shooting in Boston, Massachusetts in 2011, and were able to trace it back to Vick because the serial number was intact. Hearing Tr. 5:45, 6:21–24, 7:2–6. The firearm was specifically recovered from an individual known to be a Boston

gang member. Hearing Tr. 6:2–19. Following the recovery of this first firearm, police conducted a database inquiry that revealed that Vick had purchased an additional six firearms. Hearing Tr. 7:9–13. His purchase of these firearms is supported by ATF documents that Vick filled out when he purchased them in Georgia. Hearing Tr. 14:9–12. Police then interviewed Vick and he told them that he had purchased the seven firearms in Georgia, had transported the first one to Boston on a Greyhound bus, and stored the others in Georgia. Hearing Tr. 8:11–24. The firearms, however, could not be located in Georgia at the locations where Vick claimed they were. Hearing Tr. 9:12–16.

In 2013, Police recovered another firearm during a traffic stop in Boston. Hearing Tr. 10:14–17. The Boston Police Lab was able to recover the obliterated serial number on the firearm using chemical processes in a laboratory, and it was traced back to Vick and the purchase he made in Georgia in 2011. Hearing Tr. 7:9–13, 10:3, 11:18–21. The firearm was taken from an individual who was a verified gang member in Boston. Hearing Tr. 11:6–8. The current locations of the remaining five firearms are unknown. Order at 3; Hearing Tr. 10:3. Further, during a conversation between Vick and a cooperating witness, Vick referred to his purchasing guns in the South and driving them up North. Hearing Tr. 19:1–4. There is some evidence that Vick may have given one of the firearms to his brother, Gregory Vick, who has a lengthy criminal record, including firearms convictions, and is a known gang associate. Hearing Tr. 21:21–23:6.

## III. Discussion

Under the Bail Reform Act, upon a motion by the government, a defendant must be detained pretrial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any

other person and the community." 18 U.S.C. § 3142(e). In making this determination, the court considers the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). To warrant detention, the government must prove by a preponderance of the evidence that Vick poses a risk of flight or by clear and convincing evidence that Vick is a danger to the community. See United States v. Patriarca, 948 F.2d 789, 792–93 (1st Cir. 1991); see also United States v. Debrum, No. 15-10292-NMG, 2015 WL 6134359 at *4 (D. Mass. Oct. 19, 2015). District courts review challenges to a magistrate judge's pretrial detention order *de novo*. United States v. Marquez, 113 F. Supp. 2d 125, 127 (D. Mass. 2000) (citing United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990)); see also United States v. Rose, No. 11-10062, 2012 WL 2500497, at *1 (D. Mass. June 26, 2012); United States v. Hernandez, No. 14-10367, 2015 WL 4448094, at *2 (D. Mass. July 20, 2015).

After having carefully reviewed the record before Magistrate Judge Dein, the Court finds that the government proved, by clear and convincing evidence, that no conditions short of pretrial detention would reasonably assure the community's safety, and, by a preponderance of the evidence, that Vick poses a flight risk.

The offense charged against Vick is serious and involves multiple firearms. A grand jury has found probable cause to believe that Vick committed the crime with which he has been charged. One of the firearms purchased by Vick and transported from Georgia was recovered at the scene of a shooting in Boston, involving a known Boston gang member, and another was recovered with an obliterated serial number, also from a known Boston gang member. Thus, there is evidence that Vick illegally transported several guns to Massachusetts that were ultimately used for illicit purposes. Further, five of the firearms at issue in this case remain unaccounted for. Vick's personal history, the nature and circumstances of the charged offense, which involves the transportation of many firearms, and the weight of the evidence establishes, by clear and convincing evidence, that releasing Vick from detention would jeopardize the safety of the public, and that there is no condition or combination of conditions that would reasonably assure the safety of the community.

The government has also proven by a preponderance of the evidence that Vick poses a risk of flight and that there is no condition or combination of conditions that would reasonably assure Vick's appearance. It is not clear how long Vick lived in Massachusetts before his imprisonment, but he does have family ties to Georgia, has traveled there, and used to live there. Hearing Tr. 9:8–16, 14:13–16. If convicted, Vick faces an advisory guideline sentence of forty-one to fifty-three months imprisonment under the statute. This potentially lengthy sentence on the heels of his sentence for money laundering creates a strong incentive for him to flee. Based

on these factors, the Court finds that there is no condition or combination of conditions short of detention that would reasonably assure Vick's appearance at future proceedings.

      Vick argues, in essence, that Magistrate Judge Dein's decision to detain him should be revoked because there are no new facts warranting detention since Vick was released to home detention and monitoring following his money laundering indictment. Vick further argues that the evidence underlying his current indictment was known at the time that he was charged with the money laundering counts. The judge presiding at the time did not order him detained and the U.S. Attorney's Office did not indict him on the firearms charges. Vick, however, has not shown that the judge who decided not to order him detained on the earlier money laundering charges considered the evidence and circumstances that are now before this Court. Although Vick argues that the knowledge of other agencies should be imputed to the Assistant U.S. Attorneys who decided not to request that Vick be detained pre-trial or before he reported to serve his sentence, there is no evidence that the decision considered Vick's possible involvement with the transport of firearms. Finally, the circumstances have changed since Vick was indicted for the money laundering charges: he now faces a new indictment and even more prison time. Under these circumstances and regardless of the circumstances of the earlier detention proceedings, the Court finds that Vick is a danger to the community and poses a flight risk.[1]

---

[1] The Court notes that even without the gang evidence and even if the Court were to infer that everyone involved in the earlier detention decision must have known about Vick's alleged involvement in the transportation of firearms, the outcome here would be the same based on the record before this Court concerning the nature and circumstances of the offense, the resulting danger to the community, and the risk of flight given the possibility of a successive sentence.

## IV.     Conclusion

For the foregoing reasons, Vick's motion to revoke the detention order entered on October 20, 2016 [ECF No. 53] is <u>DENIED</u>.

**So Ordered.**

Dated: February 28, 2017

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE
